COMMONWEALTH *vs.* LISA M. LOMBARD
(and a companion case[1]).

No. 93-P-679.

Worcester. January 11, 1994. - July 20, 1994.

Present: WARNER, C.J., PERRETTA, & JACOBS, JJ.

Further appellate review granted, 418 Mass. 1108 (1994).

*Robbery. Practice, Criminal,* Required finding, Grand jury proceedings, Trial of defendants together, Disclosure of evidence. *Joint Enterprise. Assault and Battery.*

At a criminal trial, the Commonwealth failed to submit evidence of the participation of two defendants as joint venturers with a third defendant in an unarmed robbery; their motions for required findings of not guilty should have been allowed. [47-48]

In a criminal case, there was no support in the record for a defendant's contention that the prosecutor presented false evidence to the grand jury. [48]

Nothing in the record of a criminal case supported a defendant's motion for severance of her trial from her codefendants. [48-49]

A criminal defendant did not demonstrate any prejudice from a late disclosure of a photographic identification of her. [49]

At the trial of indictments, error, if any, in the jury instructions on consciousness of guilt did not create a substantial risk of a miscarriage of justice. [49]

INDICTMENTS found and returned in the Superior Court Department on August 5, 1992.

The cases were tried before *James P. Donohue*, J.

*Edward C. Bryant, Jr.*, for Anita M. Sargent.

*Brian J. Buckley* for Lisa M. Lombard.

*James P. McKenna*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On the night of June 22, 1990, just as Georgette Corriveau came out of a store at a shopping mall and was about to get into the passenger seat of her automobile,

---

[1] Commonwealth *vs.* Anita M. Sargent.

Henry Lombard pulled her purse from her shoulder and ran off into the parking lot. Her husband, Ronald Corriveau, told her to wait and gave chase in the car. He caught up to Henry Lombard, who had been weaving among the parked cars, got out of the car, and began struggling and fighting with him. The two men fell to the ground, and Corriveau clung to Lombard's legs so that he could not get up and run. As the men were struggling, a van pulled up. The defendants got out, kicked and hit Corriveau until he released Henry Lombard, and then drove off with Henry Lombard who still had Georgette Corriveau's purse. Henry Lombard pleaded guilty to numerous charges, and a jury found the defendants guilty of robbery and assault and battery. Because the Commonwealth's proof was insufficient to show beyond a reasonable doubt that the defendants and Henry Lombard were joint venturers in the robbery, we reverse those convictions but affirm the convictions on the assault and battery indictments.

1. *The evidence.* Ronald Corriveau testified that he was seated in his car, which was parked along the curb outside a Sears store in a shopping mall. The engine was running, and he was waiting for his wife, Georgette Corriveau, to come out of the store. Upon seeing her, he reached over and pushed open the passenger door. Before she could slip into her seat, her purse was pulled from her shoulder by Henry Lombard. Georgette Corriveau told her husband what had happened, and he told her to wait on the sidewalk. Because Corriveau had left the engine running while he waited for his wife, he was able to give immediate pursuit to Henry Lombard, who was running among the cars parked in the lot.

Eventually, Henry Lombard apparently tired and slowed his pace. Corriveau got out of his car and ran toward him. Lombard held to the strap of the purse and swung at Corriveau. The strap broke, and the purse sailed past Corriveau. Corriveau lunged for Lombard, and the struggle began.

Two or three people, seeing the chase and the struggle, started toward the two men on the ground. Each testified that, as they came upon the scene of the fight, a van pulled up. Two women, the defendants, got out of the van and be-

gan to kick and hit Corriveau, who was holding Henry Lombard's legs. Henry Lombard was beating Corriveau about the head. Corriveau testified that when he was no longer able to withstand the pain from the blows he was receiving, he let go of Henry Lombard and assumed a fetal position as the kicking continued.

Upon being released, Henry Lombard jumped up, retrieved the purse from where it had landed, got into the van, and drove off with the defendants. One of the witnesses to the struggle followed the van for a short time and then alerted the police, giving them a description of the vehicle. The defendants and Henry Lombard were arrested shortly thereafter. Georgette Corriveau's purse was in the van.

After the Commonwealth rested its case and the judge denied the defendants' motions for a required finding of not guilty, Anita Sargent and Henry Lombard testified. Sargent, who owned and drove the van, denied involvement in the robbery. She stated that she, Lisa Lombard, Henry Lombard, and Berry Lacardi had pulled into the mall parking lot so that the men could use the restroom. She parked "way down" in the lot and sat with Lisa Lombard, listening to the radio and waiting for the men to return. When Sargent saw Henry Lombard being chased through the parking lot, she drove in his direction. She stopped the van at the point of the struggle and saw that Henry Lombard was being restrained by Corriveau. She got out of the van and began hitting Corriveau, screaming words to the effect that Corriveau was assaulting her brother.

Henry Lombard, whose credibility was ultimately impeached by his prior convictions for burglary, stated that neither Sargent nor Lisa Lombard had participated in the taking of Georgette Corriveau's purse. The idea of taking someone's purse first occurred to him when he was returning from the restroom and saw Georgette Corriveau. After he grabbed the purse from her shoulder, he ran off in one direction and Lacardi in another. In short, he supported Sargent's testimony.

2. *The robbery convictions.* As used in an indictment, the word robbery means the "taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with intent to steal." G. L. c. 277, § 39. The indictments in the instant case charge that each defendant "did assault Georgette and Ronald Corriveau with intent to rob them,. and thereby did rob and steal from the persons of said Georgette and Ronald Corriveau money, handbag and contents . . . ." See G. L. c. 265, § 19(*b*).[2] Neither the indictments nor the jury instructions required the jury to specify whether both or which of the Corriveaus had been robbed.

At the close of the Commonwealth's case and, again, at the conclusion of the evidence, the defendants moved for required findings of not guilty. On appeal, Sargent argues that, because the Commonwealth must prove the offense as charged, see *Commonwealth* v. *Hobbs*, 385 Mass. 863, 869 (1982), and because there was no evidence that Ronald Corriveau's property was taken from his person by force, she was entitled to a required finding of not guilty on the robbery indictment.[3] The Commonwealth argues that the evidence was sufficient to show that Ronald Corriveau had the same protective concern for his wife's purse as an employee has for the property of his employer and that, therefore, he, as well as his wife, had been robbed. See *Commonwealth* v. *Stewart*, 365 Mass. 99, 108 (1974). See also *Commonwealth* v. *Jones*, 362 Mass. 83, 86-87 (1972); *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. 93, 94-95 (1986). Cf. *Commonwealth* v. *Levia*, 385 Mass. 345, 350-351 (1982); *Commonwealth* v. *Lashway*, 36 Mass. App. Ct. 677, 680-681 (1994).

---

[2]That statute, as amended by St. 1981, c. 678, § 4, provides: "Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years."

[3]We do not suggest that the first time Sargent raised this issue is on appeal. She moved to dismiss the robbery indictment on the basis that the grand jury had not been presented with any evidence of a robbery of Ronald Corriveau. See *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982).

Whether a robbery had occurred and who was (were) the victim(s) were not live issues at trial. The only real question before the jury on the robbery indictments was whether the defendants were joint venturers with Henry Lombard. Assuming without deciding that the Commonwealth's proof was sufficient to show that both Corriveaus had been robbed by Henry Lombard, we think the defendants were nonetheless entitled to required findings of not guilty by reason of the Commonwealth's failure to submit evidence of their participation as joint venturers in any robbery.[4]

At the close of the Commonwealth's case, the evidence most favorable to it concerning the defendants was that as Ronald Corriveau and Henry Lombard were engaged in their struggle, a van pulled up, two women appeared and began kicking Corriveau, and that they and Henry Lombard then sped off in the van. There was nothing in the Commonwealth's evidence to show, or to allow for an inference, that the defendants knew that Henry Lombard entered the mall intending to commit a robbery, that they positioned themselves and the van in such a way as to act as either "lookouts" or facilitators of his escape, that they saw him holding a purse as he ran from Corriveau, or that they shared his criminal intent. See *Commonwealth v. Walsh*, 407 Mass. 740, 743-745 (1990); *Commonwealth v. Flowers*, 1 Mass. App. Ct. 415, 419 (1973). Compare *Commonwealth v. Drew*, 4 Mass. App. Ct. 30, 32 (1976). Although Henry Lombard's flight from the parking lot would be relevant proof against

---

[4]Lombard has made no argument on appeal concerning the denial of her motion for a required finding of not guilty, and Sargent's argument is limited to the issue of the sufficiency of the evidence of a robbery of Ronald Corriveau. Where, however, both the defendants requested required findings of not guilty and where the only real issue at trial in respect to the robbery indictments was whether a joint venture existed, we think it appropriate "to exercise our 'rarely used power' to set aside the verdict[s] in order to prevent a miscarriage of justice." *Commonwealth v. Almon*, 30 Mass. App. Ct. 721, 724 (1991), quoting from *Commonwealth v. Freeman*, 352 Mass. 556, 563-564 (1967). For a discussion of the circumstances giving rise to a "miscarriage of justice" under *Commonwealth v. Freeman, supra*, see *Commonwealth v. Miranda*, 22 Mass. App. Ct. 10, 21 (1986), and cases therein collected.

him of his criminal act, we do not think that in the circumstances of this case the defendants' flight with him constitutes evidence of their requisite knowledge of and intention to join the criminal venture. See *Commonwealth* v. *Andrews,* 403 Mass. 441, 452-454 (1988); *Commonwealth* v. *Mahoney,* 405 Mass. 326, 330-331 (1989); *Commonwealth* v. *Pringle,* 22 Mass. App. Ct. 746, 751-752 & n.5 (1986).[5]

3. *The assault and battery.* Although all the claims of error alleged by the defendants to have occurred throughout the proceedings against them have been presented primarily in respect to the robbery indictments, some of the alleged errors could also have had an effect on the assault and battery indictments. Because the record does not reflect that the defendants affirmatively assented to their convictions on the assault and battery indictments being placed on file, see *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975); *Commonwealth* v. *Nowells,* 390 Mass. 621, 630 (1983), we consider their remaining arguments as they relate to those charges. None requires lengthy discussion.

There is no support in the record for the defendant Lombard's claim that the prosecutor impaired the grand jury proceedings by knowingly presenting false evidence. Two of the witnesses to the assault signed a statement for the police in which they stated that they saw two women kicking and beating a man. Whether the witnesses told the police that the defendant Lombard's hair was "straggley" or "curley on the bottom" is trivial. There was no error in the denial of her motion to dismiss. See *Commonwealth* v. *Martino,* 412 Mass. 267, 278-279 (1992).

Nor is there anything in the record which remotely suggests that the defendant Lombard's motion for severance

---

[5]Although the defendants were entitled to required findings of not guilty on the robbery indictments, Sargent was not entitled to dismissal of that indictment. Her claim that the grand jury was not presented with evidence sufficient to show probable cause to believe that Ronald Corriveau had been robbed, see note 4, *supra,* is without merit. The grand jury was presented with evidence of specific acts against Ronald Corriveau. Whether one of those acts constituted the crime of robbery is a question of law which is not readily or necessarily answered in Sargent's favor.

should have been granted. Severance is not required simply because one defendant expects to be inculpated at trial by the other. See *Commonwealth* v. *Moran*, 387 Mass. 644, 658-659 (1982). In any event, Sargent's testimony was sufficiently helpful to Lombard so that in her closing argument she in fact urged the jury to accept Sargent's account of the events in question. The claim that "[m]utual antagonism existed in the instant case where the Commonwealth was proceeding under a joint venture theory" merits no answer other than to note that the Commonwealth's case against the defendants on the assault and battery indictments was not based upon joint venture.

There is no question that there was a delayed disclosure of a photographic identification of Lombard by one of the witnesses to the beating. We shall assume for purposes of decision that had there been timely disclosure, a motion to suppress the photographic identification would have been brought and allowed. However, Lombard has not shown that even with suppression of the photographic identification, she "would have been able to prepare and present . . . [her] case in such a manner as to create a reasonable doubt that would not otherwise have existed." *Commonwealth* v. *Paradise*, 405 Mass. 141, 150-151 (1989). The Commonwealth presented evidence to show that two men ran from the Corriveau car after one of them (Henry Lombard) had taken Georgette Corriveau's purse and that two women were involved in the beating of Ronald Corriveau. Both Henry Lombard and Sargent testified to Lombard's presence in the van at the time of the robbery and at the time of her apprehension a half an hour later. In view of this evidence, we see no prejudice to Lombard from the untimely disclosure to her of the photographic identification. See *Commonwealth* v. *Caracino*, 33 Mass. App. Ct. 787, 793-794 (1993). For substantially the same reasons, we see no substantial risk of a miscarriage of justice in the jury instruction on consciousness of guilt.

We need not consider the defendants' arguments about the prosecutor's closing argument as the statements about which

they complain pertain to the robbery. Sargent's claim of ineffective assistance of counsel constitutes no more than allegations and does not rise to the level of the demonstration required by *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See also *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977); *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 (1992).

As to the defendants' convictions for robbery, the judgments are reversed, the verdicts are set aside, and judgments are to enter for the defendants. The other judgments are affirmed.

*So ordered.*